In re AMERICAN NAT. BEVERAGE CO.

In re DANIEL.

(District Court, N. D. Georgia. January 29, 1912.)

No. 3,014.

1. CORPORATIONS (§ 83*)—SUBSCRIPTION TO STOCK—RESCISSION—VALIDITY.
    A rescission of a contract to purchase stock inchoate at the time of the bankruptcy of the corporation is not binding on creditors of the corporation becoming such after the subscription was made, and before the proposed rescission.
    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 83.*]

2. CORPORATIONS (§ 80*)—RESCISSION OF CONTRACT TO PURCHASE STOCK—FRAUD—BURDEN OF PROOF.
    A subscriber of stock who seeks to rescind on the ground of fraud has the burden of showing such fraudulent representations as will avoid the contract of subscription completely.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 264; Dec. Dig. § 80.*]

3. BANKRUPTCY (§ 228*)—FINDINGS OF REFEREE—CONCLUSIVENESS.
    The findings of the referee in bankruptcy on a question of fact will not be disturbed unless clearly erroneous.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. § 228.*]

4. BANKRUPTCY (§ 225*)—FINDING OF REFEREE—EVIDENCE—SUFFICIENCY.
    The findings of the referee in bankruptcy of a corporation that a subscriber seeking to rescind his contract of subscription on the ground of fraudulent representations did not establish fraud held justified.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 225.*]

5. CORPORATIONS (§ 80*)—SUBSCRIPTION—KNOWLEDGE OF SUBSCRIBER.
    A subscriber of stock must be deemed to know what he could have known by the exercise of reasonable diligence; and where he could have verified any of the statements inducing the subscription and could have ascertained everything about the affairs of the corporation, but failed to do so, he may not complain on the ground of the fraud.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 244–265; Dec. Dig. § 80.*]

In the matter of the American National Beverage Company, a bankrupt. There was a judgment of the referee denying the right of H. T.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Daniel to prove a claim against the bankrupt, and he brings petition for review. Affirmed.

Watkins & Latimer, for trustee.
Smith, Hastings & Ransom, for H. T. Daniel.

NEWMAN, District Judge. There is an attempt by H. T. Daniel to prove a claim against the bankrupt corporation for $5,000. It appears that Daniel subscribed for 1,000 shares of the common stock of the corporation, and gave therefore originally notes for $15,000. Five thousand dollars in amount of these notes appear to have been returned to Daniel soon after their execution, leaving notes for $10,-000 which were delivered by the selling agent's representative, C. M. Fort, to the corporation. These notes were executed and delivered on February ——, 1911. On April 5, 1911, $5,000 more of his notes were returned to Daniel, and, as he claims, it was understood and agreed that the other $5,000 of notes, which had been negotiated, should be returned to him as soon as they could be taken up by the corporation. It is for this $5,000 that Daniel seeks to prove a claim as a general creditor of the bankrupt corporation. The referee denied the right of Daniel to prove this claim, and the matter is brought here on a petition for review.

The claim for Daniel is based upon the fact that he demanded a rescission of the contract, and that this rescission became effective before the bankruptcy proceedings were commenced. He distinguishes his claim from those of other stockholders who claim to have been defrauded in connection with this corporation by the fact that there was, as he contends, a complete rescission of his contract, as stated, and the fact that the $5,000 of notes are outstanding against him, which he will be compelled to pay, gives him the right to prove claim for that amount. The case was argued and submitted to the court some time ago, and during its consideration, and before the court had reached any conclusion in the matter, it was represented that some effort was being made to settle the case as between the trustee, the claimant, and others interested, which might render a decision unnecessary. This attempted settlement has, however, failed, and the matter of Daniel's right to prove his claim must be determined by passing upon the correctness of the action of the referee in refusing to allow the proof.

There is a difficulty at the threshold of the case, it seems to me, because of the fact that these notes are still outstanding against Daniel, and that he has not paid the same nor has his liability upon them been determined. But waiving that, and assuming that the notes are binding upon him, and that he is perfectly solvent and will have to pay them, there is another question; and that is that this claimed rescission of his contract to purchase stock was inchoate and incomplete, necessarily so at the time the bankruptcy proceedings resulted. Assuming that there was an effort of both parties to rescind and a willingness to do so, the outstanding notes which the corporation does not appear to have been able at that time to take up prevented this

agreement to rescind being carried into effect, and the whole matter came into the bankruptcy court with this situation still existing.

A very nice question is presented as to whether the court, taking over the administration of the Beverage Company's effects with this situation existing, could go on and carry into effect an incomplete rescission.

[1] Another interesting question is whether or not the court could recognize his demand to rescind, taking the most favorable view of it for the claimant, as binding on the corporation in view of the fact that whatever was done seems to have been without proper corporate action; that is to say, particularly whether it would be binding on other shareholders and creditors of the corporation. It certainly would not, if binding at all, be binding as to creditors who became creditors of the corporation after the subscription was made by Daniel, and before the proposed rescission. How far it would be otherwise binding is at least doubtful.

But the main question in the case is the one determined by the referee, and that is whether such fraudulent representations were made by Fort, the representative of Moorefield & Bishop, the selling agents, as would justify a rescission of this contract.

[2] The referee found correctly that the burden of proof is on Daniel, the claimant, to show that such fraudulent representations were made to him as would void the contract or subscription completely. Daniel, corroborated to some extent by two other witnesses, testified to various false and fraudulent statements made by Fort, the representative of the selling agent, all of which were denied by Fort. The referee finds that Daniel fails to carry the burden so placed upon him, and to show satisfactorily, by a preponderance of the evidence, that such fraudulent representations were made as would vitiate the contract.

The finding of the referee on this subject is as follows:

"Now, as to the second contention on the part of the claimant as to the three fraudulent misrepresentations enumerated above, the referee finds that the burden is on the claimant Daniel to prove the fraud as alleged. The testimony of this point is conflicting. The claimant, Daniel, is contradicted in every point by the witness Fort, the agent who sold the stock. The claimant, Daniel, produced two or three other witnesses to sustain him in this contention. Fort admitted in his testimony that he had been deceived by Messrs. Moorefield & Bishop, the selling agents of the company, under whom he was working, as to the use the money was put to that was paid on stock, but the witness positively states that he never told Daniel anything about the use the company's money because he knew nothing of what the company was doing with the money which came into its treasury, as that was not a part of his business. Attorneys for the claimant in their brief contend that the weight of evidence sustains Daniel's statements, and that he was contradicted only by Fort. It appears to the referee that Daniel is contradicted by his own writing, and also by the witness Fort, and, further, that the claimant's contentions are not materially strengthened by his witnesses, Messrs. Knight and Jenkins. Attention is called to the testimony of these witnesses. It is of a very loose character, and they appear to be certain of nothing, and really to have heard nothing, and only testified in a general way that they knew that Daniel considered that he had been swindled, and the witness Knight strays off entirely on his own theory that one of the reasons for Daniel being

disgruntled was the fact that the ginger beer formula was not the correct formula. (See page 88 of the record.) As a matter of fact, the record of this court shows conclusively that this testimony is untrue, because the formula for making and manufacturing English ginger beer was listed among the assets of the bankrupt company, and has been sold as an asset of the company. The referee finds that the burden of proof is upon complainant to show that he was misled and induced to make the contract by fraud, which fraud consisted of material misrepresentations of fact, and that these misrepresentations were made knowingly, and for the purpose of deceiving him, and that they shall be made by the bankrupt company. The referee does not consider it necessary to go into details upon the cases cited by counsel. However, the one case that appears to the referee especially applicable to this claim is that of the Smith Lumber Company, a decision from the Fifth circuit, and afterwards confirmed by the Circuit Court of Appeals of this circuit (140 Fed. 988, 72 C. C. A. 682): 'A corporation has no authority to purchase shares of its own stock, where the transaction renders it insolvent, and as a consequence operates as a fraud on creditors, and notes given in such a case as part of the purchase price are valid, and cannot be proven in bankruptcy by the selling stockholder.' I find that the agent, Fort, had no authority to bind the company in any capacity whatever; that, acting as a subsalesman under Messrs. Moorefield & Bishop, he had no such authority, and neither had the president, Battle, such authority. The minutes and by-laws of the company fail to show that the president of the company had any authority whatever to rescind or purchase back the stock sold to Daniel. Another important fact in connection with this sale that appeals to the referee is the length of time allowed to elapse by Daniel from February 8th until about April 11th before he took any measures whatever. The record shows that he allowed this stock to be boosted by the agent, and from either hearsay or advice received from Drs. White and Broughton he took pains, as is shown by his letter, to find out all he could about the stock, and then he subscribed liberally, and for about two more months he seemed to be perfectly satisfied, and then possibly it dawned upon him that it would be well to go to Atlanta, and look into the affairs of the company, and see whether or not the money was coming in as fast as his vivid imagination had predicted it would at the time of the purchase. The referee therefore concludes that the evidence does not sustain the contention on the part of the claimant that this stock subscription was induced by fraud or was conditional; and the referee further finds that there is no legal ground for any valid rescinding of this contract of subscription, and therefore this claimant has no right to prove his claim along with other creditors in this case, who will receive dollar for dollar for their claims."

[3] It will be understood that the findings of the referee upon questions of fact will not be disturbed unless they are clearly and manifestly erroneous. The witnesses were before the referee in person and he heard their testimony, saw them, saw their manner, and everything connected with their testimony. He could better judge what weight should be given their testimony than the court can from the printed record.

[4] It would require more than appears here to justify the court in setting aside this finding of the referee on the facts.

[5] The claimant, Daniel, will be held to know what he could have known by the exercise of reasonable diligence. Daniel lived in Palmetto, Ga., about 25 miles from Atlanta, where the office of the company was located, and where its affairs were being conducted. He could easily have verified any statements that were made to him by Fort, and could have ascertained everything about the company's affairs. He failed to do this.

I do not go into all the questions discussed in connection with this case whether of fact or law. It is sufficient for me to say that I do not find such clear and manifest error in the decision of the referee refusing to allow this proof of claim as would justify the court here in refusing to confirm his action.

The action of the referee is approved.